The court will oppose case number 115-527, People of the State of Illinois v. Javier Fernandez. Are the parties ready to proceed? We are. You may proceed. Your Honors, may it please the Court, my name is Michael McDermott. I represent Javier Fernandez, the defendant in this case, Pellant. This case, Your Honors, boils down to... Could you make sure you speak up nice and loud, sir? Absolutely. I apologize. The acoustics are not perfect here, so we... It might be my fault, Your Honor. I'm a little... We want to make sure we hear you. Your Honors, what this case boils down to is whether Javier Fernandez should be held legally responsible for the actions of Johnny Gonzalez on January 20, 2008, almost six years ago to the day, from today's date. And I don't just mean for any of the actions of Javier or Johnny Gonzalez, the principal in this case, but for all of the actions of Johnny Gonzalez. Just as in the appellate court, we do not contest that my client, Javier, intended to drive Johnny Gonzalez to the scene of a burglary where... Mr. Gonzalez, the principal, broke into a car. He exited the car that my client was driving, broke into a car, and at some point during or at the very end of that burglary of an automobile, it was interrupted. The actions of Mr. Gonzalez were interrupted by an off-duty Chicago police officer, and a shootout ensued between the principal, Mr. Gonzalez, and the officer, Salgado. During that shootout, my client, Mr. Fernandez, who remained in the car the entire time, he was struck several times. And we don't contest, for purposes of the burglary, the accountability because my client made a confession. After he was arrested, he admitted that he intended to drive Mr. Gonzalez to the scene and that he intended to remain in the car, and he knew that Mr. Gonzalez was going to, or planned to, rather, break into parked automobiles in order to steal. However, in this particular case, and it's somewhat unique, I don't think Mr. Fernandez, Javier, should not be held responsible for the aggravated discharge of a firearm here. And again, it's, in my opinion, very unique because... Mr. McDermott? Yes, ma'am. Your first issue you set forth is the standard of review, but isn't really the argument as to the scope of the accountability statute? Yes, absolutely. The scope of the accountability statute is what I would submit is the real argument. And the standard of review, I would say, is a threshold matter. I mean, I should back up and say under any standard of review, I think that Mr. Fernandez should not be held accountable for this aggravated discharge of a firearm. However, I do believe that the proper standard of review for interpreting the accountability statute is de novo. I do believe that. That's correct. The scope, in this case, I believe that the accountability statute, and again, to be fair, I'm not advocating, we're not advocating that the common design rule should be, you know, stricken or anything like that. It's just that in this case, where somebody intends to facilitate or aid or promote somebody in one offense, in this case, burglary of an automobile, which does not require a firearm, and again, particular to this case, there was no knowledge, in fact, or nothing in the record, that shows that my client, Javier Fernandez, knew that Johnny Gonzalez had a firearm. I think it would be different if, under the exact same circumstances, they were on their way to break into a car, and my client said in his statement, I observed him, he had a firearm. I think that's different. But in this case, you have one offense, which does not require a firearm. Yes, Your Honor. I didn't see where you addressed the Kessler case out of this court in your brief, did you? I did not. No, I did not address. Are you familiar with it? I've read the State's brief and, of course, and the Kessler case, with respect to, I'm not intimately familiar with it. Is there a specific question that you want me to address? Well, I've got some facts on the case, but I want to know how it's different from that case, because in that case, a plan to commit a robbery leads to an unexpected shooting by a companion the defendant thought was unarmed. And the only difference that I see is that your client actually helped the shooter flee from the scene, whereas Kessler was left by himself in the car. A quote from Kessler, if this helps, is burglary was the offense which the defendant and his companions had jointly planned, and you're not contesting that, and were jointly committing, and each was legally accountable for the conduct of the other in connection therewith. The result was the offense of attempted murder of Louis Cauty, the tap owner, and of State Trooper Max L. Clevenger, who answered a report of the incident and who tried to apprehend the fleeing parties. So I, you know, that's a case out of this court. I'm just wondering what the differences are between that case. Is it a, I'm sorry, and again, I don't have a copy of the case in front of me. Is it, you said initially, your initial question was that was a robbery case? Yeah. I'll give you the facts because I have them here, if that helps. It's short. In that case, Kessler waited outside in the car while his two unarmed companions went into a bar to rob it. Once inside, his companions found a gun, things went bad, and one of them shot the bar owner. The two companions then fled on foot and shot at a police officer while trying to escape. All of this happened while Kessler was waiting outside in the car, and when his companions left him, they were unarmed. And nevertheless, under the common design rule, this court affirmed Kessler's convictions for the attempted murder by accountability of both the bar owner and the police officer. I would submit, Your Honor, that it actually is different just because they went in to commit a robbery. I think that with a robbery, there's more of a chance. It's more, I don't want to hesitate to use the word foreseeable, but I think that there's a greater chance of there being some sort of armed conflict or resistance, if you will, to the robbery versus breaking into a car. They were specifically looking for empty cars. They were not, I understand burglary is a forcible felony, and I'm not trying to advocate that it be removed from that category, but I'm saying that obviously there's a difference between going in and robbing an individual or several individuals going in and robbing an individual or a bar or business, something like that, which is open and occupied. I think that would be different. There's a greater chance of meeting resistance and possibly violence ensuing as a result of that robbery versus specifically looking for an empty car. And I think that in this particular case, because they were looking for empty cars and there was a substantially lesser chance of resistance, that I think it's less foreseeable or less, and again, to use the language of one of the cases that the state cites in their brief, the Brennan case, the 150-year-old case that's cited in the state's brief from this, I believe it was from this court. They said, and it's a really short quote, he who advises or encourages another to do an illegal act is responsible for all of the natural and probable consequences that may arise from its perpetration. And I think that in the case where you're going to do a robbery and you know that the business is open or there's people inside, I think it would naturally and probably, I guess, flow from that as a much more natural consequence that you'd be met with either resistance or violence or something like that. And you think that distinguishment holds even where, in the case that I gave you, there were two unarmed companions that went into a bar to rob it, and once in there, they found a gun. I mean, the guy out in the car doesn't even know that two other people in the car had a gun. They found a gun inside. Well, I'm sorry. Go ahead. I'm just throwing it out. I think that's an important case that needs to be distinguished. I want to give you the opportunity to do it. Well, I think that, again, I do think it is different, and I think that, I mean, I don't want to say that that case was, I don't know. I'm not as familiar with that case, obviously, as I am with this one. But I think that in that case, it's a judgment call, whether that's reasonable, whether that's natural and a probable consequence of what was done. I think it would be different if they went in and they ended up beating somebody or if they went in and somebody had a heart attack as a result of that robbery. I think that it all depends. They found a firearm, obviously. I would say, I mean, I'm a defense attorney, so I would say maybe that the person who remained out in the car wasn't necessarily in on that plan, and it's not a natural and sort of a foreseeable consequence of that offense. However, I mean, as Your Honor said, it's a case from this case. And I think to distinguish it, I think would be the sort of the seed of that first offense, and that case was a robbery, which I think the fact that you're going in to take personal property from another person or a group of people or a business that's occupied, that is different than specifically looking for an empty car to break a window and steal a stereo or an iPod or whatever it is you're looking for. In one case, I think it's a substantially greater chance of a consequence, an ultimate consequence, of meeting violence. And then whatever happens after that, I think is. So wouldn't we have to look at every case and all its facts to determine whether there's a chance to take a burglary of a house, that same facts, except it's a burglary instead of a robbery. Two people go in, and it turns out the house is not, is in fact occupied, and somebody gets shot, whether it's the perpetrators or the resident. Is the guy in the car who's helped with the burglary responsible? Do we have to look at the foreseeability of a person being in there? Is that not a felony murder occurred as a result of a burglary? Well, I think, and I actually know, and Your Honors do as well, that when it comes to felony murder, it's a great example. It's a great question. Your Honors do look at the foreseeability for felony murder. That's one of the, I mean, I can remember, I think, I believe Dennis addressed one of the cases that was cited here. There's a bunch of other cases, obviously, that deal with felony murder and the foreseeability aspect, and there's a question in a lot of those cases as to whether or not, especially with when it affects the, or when you're employing the, specifically when the police officers are the ones who shoot somebody and then the surviving defendant is charged with the murder, then you're, it falls into the approximate cause theory of felony murder. I think that there is a way out. There's that causal chain that can be broken. Is it foreseeable? Of course, and in the felony murder sort of sphere, it is foreseeable that the police will show up and that somebody might get shot. Why? Because police are always armed. Every on-duty police officer, they don't go to their job without a firearm, without a gun, and it's reasonable to foresee or to, whether you specifically think about it or not, it's reasonable to think that you might be met with resistance or violence. Whereas, in this case, both the offense, legally, that my client agreed to assist in didn't require a gun. He also, in fact, didn't, we're not talking about a police officer who's on duty who always carries a firearm. There's nothing in the record about Mr. Gonzales, about my client knowing or frequently seeing Mr. Gonzales with a gun. He wasn't known to carry a firearm. There's nothing in the record. It's totally silent on that. So I think that that does make for an important distinction. Mr. McDermott? Yes, sir. With regard on your second issue, what factors are relevant to show or not show common design? And is it your position that we cannot consider the events after the offense? Well, I believe that, and again, it's straight from, I think most recently it was in the court's decision in Dennis. And the Dennis decision did not say you, for purposes of accountability, you can only look at the duration of the offense to see whether or not the defendant intended to aid the principal. You only look at the duration of the offense from start to finish, except for in common design cases. That's not what it said. It said in cases of accountability, you are specifically not to look at what happens after the offense. I think, again, that's another important point to make. The State's brief is wrought with examples of he lied, my client lied after the fact, and he sought medical treatment in an apartment, and he fled, obviously. And I think that all those points don't, they don't enter to the benefit of the State, I think in the sense that they would like them to, because, again, with quoting Dennis and then recently the appellate court in Phillips, I think that that was not supposed to be, with all respect to the appellate court, I think that was not supposed to be, and the trial court as well, that was not supposed to be considered in this case. What happened after the offense had been completed, you're looking at all that matters under the accountability statute is whether or not before or during the offense my client intended to promote, facilitate, and so on and so forth, the offense in this case. And we don't contest the statement. We don't, I actually think that the statement, strangely, I don't say this very often as a defense attorney, the statement actually helps my client with the point that I'm trying to make in this case. He doesn't mention anything about a firearm. He never saw a firearm. The State's attorney, he made a full statement. He didn't start and then stop and then lawyer up or anything like that. He made a full statement. He signed it. He asked, questions were asked of him. He gave full and complete answers. And I think that it's disingenuous of the State to rely, to cherry pick pieces of my client's statement as confession. Oh, we know about common design. We know intent. We know.    Kagan. Kagan. Kagan. Kagan.    Kagan.   Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. It's not contested by the State that my client is not the one who actually committed the offense in this case. The State proceeded at trial and obviously on appeal we argued, they argued as well, that he was to be held accountable for the actions of another person under the accountability statute. Is there something about the words, the plain language of the statute that we're supposed to be interpreting here? I believe it's whether or not the actions of my client in promoting, facilitating, aiding, abetting, planning, driving, essentially driving Mr. Gonzales to the scene of the crime made him accountable. Whether the evidence was sufficient? No, whether he was legally accountable under the set of facts, the facts that used to try to take all the evidence at trial, I'm not asking to exclude any of it. I mean, there weren't a lot of issues that were contested in this case. On appeal, obviously we're not arguing anything with respect to discount this witness or witness credibility or anything like that. We're saying that except it all is true and in this case, with respect to the requirements under the accountability statute were not met. And that there is no evidence that my client acted in furtherance of Mr. Gonzales' perpetration of the offense of aggravated discharge of firearm in the direction of a police officer. Officer still got it. I mean, my client may have been involved in driving him to the scene, but there was no plan, there was no, nothing in the record at all. It's totally silent about the firearm or about shooting somebody or shooting a police officer for that matter. So Mr. McDermott, is your argument more a sufficiency of the evidence challenge as opposed to a statutory interpretation claim? I don't believe so. Actually, I raised a sufficiency of evidence argument. I believe that was my second argument in the appellate court, and that was a traditional reasonable doubt, if you will, sufficiency of evidence argument where I said that, I mean, because there was actually, and again, it's not why we're here right now arguing, but there was a lack of, a startling lack of physical evidence as to the shooting. There was only, the only person whose shells were recovered from the scene were the officer who claimed that he was shot at first, the people who heard shots. The testimony at trial was that there were substantially fewer shots than what Salgado testified to. All those issues were raised in a credibility context with, again, the standard of review being in a light most favorable to the State's attorney. But I thought, I believe that is a different argument. This is as a matter of law, is the accountability statute satisfied with the evidence that was introduced at trial, including my client's statement, all of it together, whether that satisfies the accountability statute for the offense of aggravated discharge firearm, not with respect to, again, the burglary, which we have no, we make no bones with. So, thank you very much. May it please the Court, Madam Chief Justice, Honorable Justices, Counsel, my name is Kathy Warnick and I represent the people of the State of Illinois. The defendant comes before this Court this morning and he seeks to award responsibility for an aggravated discharge of a weapon crime which occurred after the burglary. According to the defendant, because he just planned the burglary, he shouldn't be responsible for anything else. But the defendant's argument overlooks the well-founded principles of accountability set down by this Court. This case is really a textbook case about accountability, in my opinion. This Court has often stated that you can establish accountability by one of two ways, either by a shared intent or a common design. This case has both. The defendant and Gonzalez had a shared intent to commit a burglary and the aggravated discharge of a firearm offense which happened was in furtherance of that crime. It is established under the common design rule. Of course, way back in 1854, this Court in Brennan v. People first talked about common design. And in that case, a group of people chased the victim from a store into a barn where he was killed. And at trial, the defendant said, we should have an instruction. The jury should be instructed that we can't be found guilty of murder unless we specifically intended for that to happen. And this Court said no. This Court said that under the common design rule, any act done in furtherance of a common design is the act of all. And all are guilty of the offenses which flow from it. And in case after case after case, Kessler, Terry, all of the cases of this Court have never deviated from that opinion. Over 150 years of black letter law by this Court. And implicit in each and every one of those cases is that when you act in a group and you commit an offense, things happen. Offenses happen which aren't necessarily intended or foreseen. But under the common design rule, that does not make the defendant any of the less guilty for that. The defendant in this case was clearly guilty because the facts showed that he participated before, after, and during the commission of the offense. The defendant... The special concurrence in the felon court talked about statutory analysis. And I think they came down and said that in the commission of felony number one, if someone is in the commission of felony number one, they're liable only for felony number one. What is your... Yes, that's what the defense is arguing. And the defense actually, or excuse me, the dissent, was making an argument of statutory construction based on the 2010 amendment to the accountability statute, which includes the common design language. That common design language was not in the statute in 2008 at the time of this offense. But nonetheless, it merely codified the common design rule. And the response to that is, clearly, if you look at the accountability statute, the beginning of the accountability statute said a person is responsible for the conduct of another. And in Kessler, this Court says that conduct includes any offense which happens in the course of the planned or intended offense. So clearly, in the accountability statute itself, it refutes any notion that you have to have a separate specific intent for each case that happens. What the defendant is really doing is he's coming before this Court and he's asking this Court to depart from its longstanding tradition of the common design rule. And I would submit to this Court that the defendant could not cite to one single case of this Court, not one single thing that supports his position, because there is none. This is a rule that makes sense. What does the defendant argue in his brief? He argues a case of People v. Phillips. He argues that Phillips supports his position because he wants his Court to adopt a position where he has to be, or excuse me, that the State has to individually prove a specific intent for each and every offense that happens when people act together. But that is not the law. Phillips was a case where Phillips and Sanders were in a car in the early morning hours. Phillips cut off the victims. He paused. They repositioned the car. Phillips was the driver. Sanders was sitting behind him in the driver's side seat. The victims and the defendants knew each other, and the State established a gang motive. The shooter got out of the car, shot the victims. Phillips moved to pick him up. Sanders got back in the car, and they fled. Justice Quinn, in his dissent, said this is not even a close case of accountability. Yet the appellate court reversed the trial court's decision, and this was a decision made by an experienced trial judge who found that the defendants acted as a team to avenge the death of a fellow gang member. And how did this happen? I would submit the defendant's only argument in this court today is based upon Phillips, and Phillips was wrongly decided. Phillips is causing problems in the courts below. Cases are being reversed because of Phillips. And I would submit that it is based upon a flawed application of accountability law. First in Phillips, the first thing I'd like to address about Phillips is that Phillips said, and this is where defendant gets his argument today, that the court cannot consider, and the Phillips court found they could not consider the fact that the defendant in Phillips was a getaway driver. And the court said, and I quote, that the fact that he's a getaway driver is irrelevant for the purpose of establishing accountability. I would submit to this court that that is an absolute incorrect statement of the law. That is confusing Dennis with all of this court's decisions and Batchelor, Perez, Torres, Taylor, and all of those cases. This court has consistently said that to determine accountability, what is relevant is that the defendant was present during the commission of defense, that he failed to report the crime, that he fled. All of those things are important. They don't define accountability. The state is not arguing that somebody can be guilty for a crime simply because they do something after the crime occurs. That's what Dennis says. This is something entirely different. And it's a very important difference. Because what this court has done over the years of accountability is it has given the trier of fact every tool it needs to determine whether someone is accountable or not. And at the end of the day, it's really a unique question in the province of the trier of fact. Did these people do it together or did the defendant not know anything about it? And all of those factors, each of those factors, tell the trier of fact whether the defendant is responsible or not. Is your position that Dennis, Taylor, and Phillips all stand for the proposition that the defendant had no idea ahead of time that his companion was going to commit any crime at all? No, I don't believe so. I think that those were not common design cases. Dennis and Taylor were not common design cases. They talked about the length of the offense. They said that for accountability purposes, that accountability can be determined only as far as the elements of the offense occur. So in other words, if you are only the getaway driver, if the evidence shows that you didn't know anything about what was going to happen, then you can't be guilty. But what it doesn't say is that you can't look at what happened afterward and determine whether, in your opinion, the defendant knew about this. And really, although my opponent wants to discount what happened afterwards, in this case, there can be no greater case of accountability or example of accountability because they not only agreed to a crime, he drove him in the morning, the shooter got out of the car, he was interrupted by a police officer. At that point, Fernandez moves his car to pick up the shooter. The shooter goes around the defendant's car, and he literally uses the defendant's car as a shield to fire at a police officer. The police officer fires back, and even though the defendant's hit, he flees at a high rate of speed. He hides the car that's now riddled with bullets. He lies to his family and friends. He refuses to seek medical treatment because he doesn't want to alert the police. When you look at all those factors, you know it gives you an insight into the defendant. And even aside from the statement, you don't have to have statements in accountability cases. We do here. This is not a fell-up situation. We have a statement, and then we have a crime in furtherance of it. But you don't have to have statements because what the defendant does speaks volumes. There are not always statements. You know, he didn't give a statement as to the burglary. Defendants take themselves out all the time of things. But the fact that he says he doesn't say anything about a gun, the fact that he doesn't admit that he knew that there was going to be shooting, it's irrelevant in this case. Because he agreed to the burglary, and the shooting that happened is in furtherance of the burglary. The one thing I'd like to talk to briefly about Phillips is something that I think is causing great problems below and is causing confusion as to the accountability statute. And this point about Phillips is really what defendant tries to rest his head on in this case. And that is the notion that the state must prove that the defendant specifically intended the eventual offense that occurred. Now, that is a question you ask to determine if there's a shared intent. That is not the question you ask to determine if there's a common design. To determine whether there's a common design, you look to whether they attach themselves to a group bent on illegal activity. The Phillips court specifically found that the defendant could not be guilty of the aggravated discharge of a weapon in that case because the state didn't prove that he specifically knew the shooter had a gun or that he specifically knew the shooter was going to use it. That swallows up the common design theory. That basically nullifies the common design theory. And that is how Phillips is being cited by courts today. The important question to be asked. So we agree with your argument you're asking that Phillips be overruled? Yes. Specifically? Yes. Because when you quote Phillips for that reason, you overlook the basic common design rule. The question to be asked again is whether the defendant attached himself to a group based on illegal activity. And thank you, Justice Thomas, for talking about the Kessler case. Because the Kessler case is exactly like the case before this court. The defendant didn't know, didn't make any difference whether he knew that somebody was going to be shot. Because he engaged in a felony and he was responsible for what happened. Is it your position then that anything that happens during or after the commission of that crime until it's over is in furtherance of? In an accountability sense, yes. Can he be found guilty for it just because he does something afterwards? No. But for factors of accountability, yes, absolutely. And the one other case that I wanted to talk about is the Hamilton case, which I think is just a great case. In that case, three offenders went into a watermelon patch to steal watermelons. And they were the owner heard. He came and he confronted them. But the owner's wife brought a hoe to the patch. And eventually the victim was struck by the hoe. Now, in that case, there's no way that the defendants could have known that a hoe would have ever been used. Yet this court found them guilty and criminally responsible for assault with a deadly weapon by the use of the hoe. So that case shows that you don't have to know what's going to happen. You don't have to anticipate it. When you attach yourself to a group bent on an illegal purpose, you are responsible for anything that flows from it. It brings us back to this case. In this case, the defendant planned a burglary. He agreed to a burglary. And he participated in a burglary. He is equally guilty, just as the shooter, for the aggravated discharge of a firearm offense. We would ask that this court affirm the defendant's conviction. We would also ask that this court take the opportunity to reaffirm its longstanding support for the common design rule and to clarify it for courts below. Thank you. Thank you. Counsel? Thank you. Just briefly. The state, obviously, I know that they take issue with our position in this case. And, again, we are not advocating that the common design rule be stricken from the books or anything like that. But I think that there has to be an exception. Just like in felony murder, there's an exception. If something happens that breaks after the first felony or during the first felony, it breaks the chain of events, the causal chain of events. And a lot of it, especially in felony murder in Illinois, it overlaps a lot with the tort principles and things like that of foreseeability. And according to the state's own cases, the sort of natural and probable consequence of that initial action. I think that is a very fair way of looking at this. In this case, you have an offense where there's not only factually nothing about a firearm, nothing about a gun, but it's not only not required for the offense of burglary to an auto, but in fact, there is nothing in the record that my client knew this person had. Mr. Gonzalez often carried a gun or had one that day or saw him loaded or anything like that. I think that that is substantially less likely when you're committing a burglary to an auto. Again, through an accountability theory, my client was sitting in a car, you know, several car lengths away. I think it's substantially less foreseeable that it's going to end in a shootout. You're facilitating a, even though it's a forcible felony, my client was facilitating a, according to his statement, a nonviolent offense. He didn't know this person had a gun. He wasn't going to steal property from any person. There was no discussion of force or threat of force. He was going to break into a car and maybe look for a stereo or an iPod. And my client didn't even want any part of it. That's why he sat in the car. He drove him there. He's legally responsible for the burglary. We don't contest that. But I think that to just say anything that happens later, anything that happens before or during or after the furtherance, the infuriance of that first felony, I think that that just takes it too far. And who makes that decision? Isn't it the trier of fact that's going to make that decision when you're talking about taking something too far or breaking a causal connection or foreseeability or any of those terms? Ultimately, I think. Isn't this ultimately a question for a jury or for the court to decide? Well, ultimately, I think it, with respect to Javier Fernandez, I think it's up to Your Honors whether that broke the chain. Again, if you employ a similar reasoning as in the felony murder line of cases, where foreseeability is specifically an issue, I think that in this case, and I think it's, again, it's important. I can't overstate this. I'm not saying, we're not saying that common design is flawed or it has no place in Illinois jurisprudence or anything like that. But, however, there has to be, I think, a no-nonsense kind of, well, this isn't, there wasn't a real common design here. I mean, with respect to the offense that ultimately occurred. And the State's attorney in every courtroom in the entire State has been peddling this in for a penny, in for a pound thing, you know, in accountability cases since forever, I'm guessing. And I think that this takes it even further than that. This is more like in for a penny, in for a metric ton. And I think it's just, under the facts of this particular case, where you're talking about an offense that, admittedly, my client was involved in the planning or promotion of that offense. He drove me, facilitated. Absolutely. But that offense does not require a firearm, breaking into parked cars. And he didn't actually see a firearm. I think that the Phillips case was well-reasoned. It put a limit on this common design. I mean, again, it's very fact-specific. The State makes it sound like, you know, now common design has no teeth now because of Phillips. I don't think that's the case. Common design still exists. However, under the facts of Phillips, even where someone drives you to the offense, or drives a shooter to the scene of the offense, scene of the shooting, and cuts off the other car, and then backs up the car, and then, because there was more than just swerving and stopping the progress of that car, he stopped the lane of traffic on the oncoming lane of traffic on that street. In your theory, is there any difference between shared intent and common design? And if so, what is it? There is a difference. And I think that they overlap, to be sure. I think in a lot of cases, you might have a shared intent and a common criminal design at the same time. I think that in this case, I don't think either one of those, the State can get where it wants to go using either one of those. Because certainly, my client did not have a, I think there's actually a stronger case that he did not have a shared criminal intent to commit the aggravated discharge of a firearm in the direction of a police officer. Again, he didn't know about a gun. I think that, and again, the criminal design, it's a lot of, it's similar. The design may have been to commit a burglary, but I don't think that there, that just, as the State gave you a very direct answer, yes. Anything that happens in furtherance, anything at all, it's arguably, they're arguing, rather, strict liability. That this is just, if you do one thing, that's it. Anything that happens later, I mean, there's, I think that there has to be an exception. There has to be a, this is too far. And this Court has recognized that with felony murder in the context of, if something breaks the chain of proximate cause, and this Court has said that you can't go past this line, I think that's a fair rule for accountability. I think that that could serve the State, the citizens of the State well. I think that, again, no one's saying that the first crime, he should be acquitted of that, or he should, you know, go home. No, we're not saying that at all. With respect to the offense that was unforeseen, it was not planned, it was not promoted, it was not discussed. There's no evidence in the record he knew about a firearm. Under these limited facts, I think that this was not done in furtherance, and that we, and that's why we would ask this Court, this Honorable Court, to reverse the conviction for the aggravated discharge of a firearm. Thank you very much for your consideration. Thank you, Counsel. Case number 115-527, People of the State of Illinois v. Javier Fernandez, will be taken under advice as agenda number five. Mr. Marshall, the Supreme Court stands adjourned. Thank you.